UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLINTON WIBLE,

                 Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

CASE NO. 3:25-cv-05590-DGE

ORDER REGARDING THE
COMMISSIONER'S FINAL
DECISION

Plaintiff seeks review of the denial of his application for a period of disability and disability insurance benefits. Plaintiff contends the Administrative Law Judge ("ALJ") erred in assessing Plaintiff's testimony and the medical opinion of Zachary Sparer, ND. For the reasons discussed herein, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## I      BACKGROUND

Plaintiff filed his application for disability insurance benefits on April 23, 2023. (Administrative Record ("AR") at 17.) Plaintiff's application was denied initially and on

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 1

reconsideration.  (AR 17.)  Plaintiff's requested hearing was held before the ALJ on December 5, 2024.  (AR 17.)  On January 31, 2025, the ALJ issued an order finding Plaintiff was not disabled pursuant to the Social Security Act, sections 216(i) and 223(d).  (AR 14, 17.)

Using the five-step disability evaluation, the ALJ found Plaintiff not disabled at step four. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 10, 2022.  (AR 19.)  At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, neuropathy, obesity, sleep apnea, cervical radiculopathy, spinal stenosis, and facet arthropathy.  (AR 19.)  At step three, the ALJ found these impairments do not meet or equal a listed impairment.  (AR 21.)  The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform "light work" that does not require "lifting or carrying more than 10 pounds;" "kneeling, crawling, or climbing of ladders, ropes, or scaffolds;" "more than occasional stooping, crouching, or climbing of ramps or stairs;" "more than frequent balancing;" "more than occasional handling, fingering, or feeling;" or "concentrated exposure to hazards or extreme cold."  (AR 21.)  In considering Plaintiff's symptoms, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms to some degree," but "[i]nconsistencies [with the treatment record and contemporaneous reports of actual functioning] undermine the weight that can be given to the claimant's symptom reports."  (AR 22.)  At step four, the ALJ found Plaintiff can perform his past work as a Safety Manager and a Quality Control Manager and is thus not disabled.  (AR 28–29.)[1]

---

[1] Having found Plaintiff not disabled at step four, the ALJ did not consider step five.  (AR 19) (only "[i]f the claimant is unable to do any past relevant work or does not have any past relevant work, [does] the analysis proceed[] to the fifth and last step.".)

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 2

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  (AR 1, 5.)  On July 4, 2025, Plaintiff filed a complaint in this Court.  (Dkt. No. 3.)

## II    LEGAL STANDARD

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational.  *Ford*, 950 F.3d at 1154.  Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## III    DISCUSSION

Plaintiff raises two issues in his opening brief: (1) whether the ALJ properly evaluated Plaintiff's subjective symptom testimony and (2) whether the ALJ properly evaluated the opinion of Zachary Sparer, ND.  (Dkt. No. 11.)  Defendant responded, arguing neither serves as a basis to reverse the ALJ's decision.  (Dkt. No. 13.)  Plaintiff did not file a reply.

### A.  Plaintiff's Testimony

"In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis."  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, "the claimant must produce objective medical evidence of underlying 'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably be expected to produce pain or other symptoms.'"  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–1282 (9th Cir. 1996)).  Second, "and if the ALJ's

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 3

credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about the severity of symptoms with 'specific findings stating clear and convincing reasons for doing so." *Id*. (quoting *Smolen*, 80 F.3d at 1284).

At his December 5, 2024 hearing, Plaintiff testified about his condition.  He stated that, for approximately three and a half years, he has required significant assistance from his wife, including assistance with clothing, personal hygiene, feeding, and driving.  (AR 54–55.)  He testified that he worked for approximately a year after his wife began assisting him at home and, during this period, he "wasn't able to function in that job" and spent "[a]bout 80 percent" of the time laying down in the bathroom.  (AR 60, 62.)  At the time of the hearing, Plaintiff testified "[a]s much as possible, I try not to use my hands" and that he "[couldn't] stand for any length of time."  (AR 55, 57.)  Plaintiff further confirmed that from June 2023 to late 2024, he had only seen Zachary Sparer, ND, at A to Z Wellness and Dr. Henegan at Alliance Pain Center.  (AR 57–58.)  He also had an MRI scheduled for February 2025.  (AR 57.)  Plaintiff has a "VA rating of 100 percent disability."  (AR 59.)

It is undisputed that Plaintiff produced objective medical evidence of the following severe impairments: degenerative disc disease, carpal tunnel syndrome, neuropathy, obesity, sleep apnea, cervical radiculopathy, spinal stenosis, and facet arthropathy.  (AR 19.)  But at step two, the ALJ found Plaintiff's testimony undermined.[2]

The ALJ found Plaintiff's testimony inconsistent with his clinical record.  First, the ALJ noted, at a September 2022 medical appointment, Plaintiff "demonstrated full strength in both

---

[2] Defendant indirectly argues in briefing that the ALJ found malingering.  (Dkt. No. 13 at 8) (discussing ALJ's "findings indicating exaggeration".)  Because the ALJ did not find malingering and instead found Plaintiff unreliable at step two, the Court similarly does not find malingering and instead reviews only the ALJ's evaluation of Plaintiff's credibility under step two.

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 4

upper extremities, normal sensory exam in C5-T1 dermatomes, and normal cervical and shoulder ranges of motion." (AR 24.) Second, the ALJ noted, in August 2023, Plaintiff could "remove and replace his shoes, make a fist, and pick up a coin from a flat surface with both hands without difficulty." (AR 24.) The ALJ concluded, based on these clinical findings, "[t]he claimant is not without limitation, but the degree of limitation he has asserted is inconsistent with the capabilities shown in the medical evidence as well as the variations demonstrated in the evidence." (AR 24.)

The ALJ also found inconsistencies within the Plaintiff's symptom reports. First, the ALJ found only ten days before Plaintiff stopped working, Plaintiff "indicated that he could bathe, toilet, and dress himself" as well as "lift 50 pounds occasionally and that he could do normal work." (AR 25.) Second, the ALJ found the fact Plaintiff continued working after his wife began assisting him at home indicates "[w]hile they may have chosen to have her do these functions for him," nothing in the record "show[s] he could not have done them for himself." (AR 25.) Third, the ALJ found it inconsistent that Plaintiff would be laying down in the bathroom for 80% of the day at work but only mentioned at his April 1, 2022 treatment appointment that "'physical labor/exertion' aggravated his condition and that he occasionally switches hands to cope." (AR 25.) Fourth, the ALJ noted Plaintiff indicated "80-90% improvement" in August 2022 and continued improvement through March 2023. (AR 26.) Fifth, the ALJ found Plaintiff declined multiple treatments. (AR 26.) Sixth, the ALJ found Plaintiff's statements to Dr. Henegan that "he was unable to perform self-care, housework, shopping or any other sort of activities" inconsistent with his function report and hearing testimony. (AR 26.) Seventh, the ALJ found Plaintiff inconsistently referred to his pain at times

as "numbness and tingling, aching discomfort, and some handgrip weakness" and at other times "extreme pain and electric shocks." (AR 26.)

Plaintiff makes two arguments in defense of his own testimony. First, Plaintiff argues the ALJ ignored an October 2022 MRI "which found cervical spinal stenosis moderate to severe at C5-C6, and moderate to severe spinal stenosis at C6-C7, severe stenosis to the right at C6-C7 and moderate[] to severe right C7-T1 neural foraminal stenosis with lesser degrees of neural foraminal stenosis throughout the remainder of the cervical spine." (Dkt. No. 11 at 2–3.) Plaintiff asserts the ALJ relied primarily on a report by Dr. Henegan—who lacked access to the MRI—but Dr. Vogelgesang—who reviewed the MRI—noted stenosis as well as "carpal tunnel rated severe on the right side and moderate to severe on the left side with reported constant and chronic hand numbness, tingling and weakness." (*Id*. at 3.) Second, Plaintiff argues the ALJ erred in finding his April 1, 2022 report inconsistent with his symptom testimony. Plaintiff argues "his condition did worsen following that visit, as evidence[d] by the fact that he lost the job described in that report and this worsening was further documented in the MRI performed in October 2022 and the findings regarding the severity of his Carpal Tunnel Syndrome." (*Id*.) Plaintiff also argues his function report indicates "he is unable to complete most activities of daily living independently, but will do his best to help as much as possible." (*Id*. at 4.)

Neither of Plaintiff's arguments is sufficient to reverse the ALJ's finding. Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678–679 (9th Cir. 2017). "The standard isn't

whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The Court finds the ALJ had "specific, clear, and convincing" reasons to find Plaintiff unreliable.  First, the ALJ had "specific, clear, and convincing" reasons to find Plaintiff's testimony inconsistent with Dr. Henegan's findings.  Dr. Henegan was permitted to provide an opinion of Plaintiff based on a physical examination and the ALJ was permitted to find Plaintiff's testimony about his physical abilities inconsistent with Dr. Henegan's physical examination of Plaintiff.  *See Haislip v. Astrue*, 316 Fed. App'x. 538, 540 (9th Cir. 2008) (identifying "physical exam" as a possible basis on which to base a medical opinion).[3] Moreover, even if the ALJ relied only on Dr. Vogelgesang's report, Plaintiff does not address the ALJ's finding that Plaintiff declined multiple treatment plans Dr. Vogelgesang believed would be effective.  (AR 26.)  An ALJ may find "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted).

Second, Plaintiff's claim his testimony is consistent with a deteriorating condition is unavailing.  Even if Plaintiff's condition has gotten worse over the years, it does not negate inconsistencies in how Plaintiff reported initial symptoms.  The ALJ provided "specific, clear, and convincing" reasons to find Plaintiff's self-reports inconsistent.  First, the ALJ identified an inconsistency between Plaintiff's claim he required his wife's assistance at home in approximately mid-2021 (three and a half years before December 2024) and Plaintiff's April 1, 2022 answer of "I could do these myself" in response to whether was able to perform "[b]athing,

---

[3] While Dr. Henegan did not consider the MRI, the ALJ did note the MRI in his decision.  (AR 23.)

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 7

toileting, and dressing." (AR 25, 323.)  Second, the ALJ identified an inconsistency between Plaintiff's statement he spent his last days of work laying down 80% of the time and his report only ten days prior to his last day of work that he could do "[n]ormal work." (AR 25, 323.)

Accordingly, the ALJ did not err in finding Plaintiff's testimony unreliable.  The ALJ identified "specific, clear, and convincing" reasons to find Plaintiff's testimony inconsistent with medical examinations and Plaintiff's own prior reports.

## B. Zachary Sparer's Opinion

ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 404.1520c(a).  Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources.  *See id.*; 20 C.F.R. § 404.1520c(c)(1), (c)(2).  To find a medical expert's opinion not credible, "[u]nder the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence.'" *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (quoting *Woods*, 32 F.4th at 792).[4]

In May 2024, Sparer found Plaintiff's condition "would interfere with prolonged standing, walking, or sitting upright, use of either upper extremity for reaching, holding,

---

[4]While Sparer is not an "acceptable medical source" for diagnosing certain conditions, Sparer's report may not be entirely discredited because of his credentials.  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) ("[A]n ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources[,]'" and "may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so."); *Putz v. Astrue*, 371 Fed. App'x 801, 803 (9th Cir. 2010) (unpublished) ("According to Social Security Ruling 99–2p, the ALJ should 'carefully consider' information provided by treating naturopaths.").

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 8

handling, or fingering, and/or would require that [Plaintiff] rest or recline at times during the day." (AR 359.) Sparer also found Plaintiff "could be expected to experience pain or fatigue severe enough to interfere with attention, concentration and persisting at tasks" for 30% or more of the day. (AR 359–360.) Sparer found Plaintiff would be able to sit upright and stand "[l]ess than 1 hour" during an eight-hour workday and would need to recline between two and four hours of the workday. (AR 360.) Sparer also found Plaintiff would "less than occasionally" be able to use either upper extremity for lifting and manipulating, either hand for fingering, or either arm for forward reaching. (AR 361.) Sparer concluded Plaintiff would have "absenteeism of 3 or more days per month on a more probable than not basis" had he "attempted even sedentary work since his alleged onset date of 4/10/2022 on a full time regular and sustained basis," noting he expected "such a prolonged schedule would likely result in a severe flare." (AR 361.)

The ALJ found Sparer's report "not persuasive" and "lack[ing] support." (AR 28.) The ALJ found a lack of support for Sparer's opinions because "his opinions are based on the claimant's reports, not medical signs or findings." (AR 28.) The ALJ also found Sparer's report was "inconsistent with the other records which show that the claimant [had] good strength in his upper and lower extremities except" certain limitations like decreased grip strength, decreased sensation in the upper extremities, diffuse decreased sensation of the right arm, difficulty with transitions from sitting to standing and standing to walking, decreased range of motion, and an "antalgic gait." (AR 28.)

Plaintiff contends the ALJ erred in evaluating Sparer's opinions. (Dkt. No. 11 at 4.) Plaintiff argues, "[o]ne of the reasons [why the ALJ rejected the opinions] is that they are based, at least in part on the statements of the Plaintiff. However, for the reasons explained above, the Plaintiff's testimony is credible and supported by objective imaging." (*Id*.) Plaintiff also argues

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 9

the ALJ's conclusion that "the opinion is inconsistent with findings that the Plaintiff has normal strength in his upper extremities" conflates "pain with retained strength, as one can have good strength for one-time movements, but pain inhibits the claimant's ability to sustain movements or activities." (*Id.*)[5]

Plaintiff's defenses of Sparer's report are unavailing. First, "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). The ALJ, after finding Sparer's report "repeatedly mentions that his opinions are based on the claimant's reports," found the report unpersuasive. (AR 28.) Plaintiff does not rebut that Sparer relied on Plaintiff's own reports. And, as discussed *supra*, the ALJ did not err in finding Plaintiff's testimony unreliable. Accordingly, the ALJ provided an "explanation supported by substantial evidence" for finding Sparer's report unpersuasive.

Finally, Plaintiff argues the ALJ erred in finding Sparer's conclusion that Plaintiff could not work without significant limitation inconsistent with other findings that Plaintiff showed "good strength." (Dkt. No. 11 at 4.) But other medical reports directly contradict Sparer's conclusion. Dr. Stanley S "opined that the claimant could perform work at a sedentary exertional level with lifting and carrying 10 pounds occasionally and frequently [] sitting,

---

[5] Plaintiff also notes other experts found certain limitations and states "[i]t is unclear in what way the ALJ finds these findings contradict" Sparer's report. (Dkt. No. 11 at 4.) But the ALJ did not conclude Sparer's result was inconsistent with these limitations identified by other experts. Rather, the ALJ concluded, while all experts identify Plaintiff has certain limitations, Sparer's conclusion about the impacts on Plaintiff's ability to work is inconsistent with the conclusion of other experts.

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 10

standing, and walking for six hours in an eight-hour workday." (AR 27.)[6] Plaintiff does not challenge the legitimacy of Dr. Stanley S's report.

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." *Batson*, 359 F.3d at 1195. The ALJ here was presented with a conflict between Dr. Stanley S and Sparer. The ALJ concluded Dr. Stanley S's report was "well-supported" and "consistent with the treatment records," while Sparer's was based only "on the claimant's reports" and "inconsistent with the other records." (AR 27–28.) As identified *supra*, the ALJ provided a legitimate "explanation supported by substantial evidence" to find Sparer's report not credible because it was based on the self-reports of a claimant found unreliable.

Accordingly, the ALJ did not err in finding Dr. Stanley S's report persuasive and Sparer's unpersuasive.

## IV    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

Dated this 23rd day of March, 2026.

David G. Estudillo
United States District Judge

---

[6] The ALJ also commented on reports from Dr. Vogelgesang, Dr. Henegan, the Department of Veterans' Affairs, and Donna Pierce Wible. (AR 27–28.) Plaintiff does not challenge the ALJ's analysis of any of these other reports.

ORDER REGARDING THE COMMISSIONER'S FINAL DECISION - 11